UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CAROL ANN SCHMICKER et al, | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 17-11628 |
| v. | : | **OPINION** |
| TARGET et al | : | |
| Defendants. | : | |

This matter comes before the Court by way of Defendant's Motion for Summary Judgment [Dkt. No. 27]. Having considered the parties' submissions, the Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendant Target's motion will be granted.

I.  Background

This case concerns a slip and fall at Target's Deptford store on September 23, 2015. On that date, Carol Schmicker ("Plaintiff") was shopping at the Deptford Target for approximately five minutes when she decided to retrieve a coupon from her vehicle. [Dkt. No. 27 ¶ 4 ("Def. SMF")]. Plaintiff proceeded past the checkouts toward the exit of the store. (Id. at ¶ 5). While walking towards the exit, Plaintiff "went sliding and . . . [came] down on the left side because there was a trail of liquid." (Pl. Dep. 36:1-5). Plaintiff was not carrying anything when she fell. (Id. at 36:11-20).

Prior to her fall, Plaintiff did not see anything on the floor in the area she fell. (Def. SMF ¶ 6). When she sat up, she saw water and a trail from her "slipping and falling." (Id. at ¶ 7). Plaintiff has no knowledge regarding how the clear liquid got to be on the floor or how long it was on the floor before her fall. (Id. at ¶¶ 8,9). After her fall, a

1

woman checking out asked if Plaintiff was alright, and a Target employee went over to help Plaintiff get up. Plaintiff, however, could not get up. Target employees called for an ambulance. (Pl. Dep. 38:5-20).

"The area where the incident occurred was captured by Target's security camera located within the exit vestibule pointed inside of the store." (Def. SMF ¶ 11). The camera captured "thirty (30) minutes of video footage prior to the subject incident." (Id. at ¶ 12). "During that timeframe many more than 20 people pass through the tile area leading to the two sets of double exit doors." [Dkt. No. 29-1 at ¶ 13 ("Pl. SMF")]. The footage shows that at 1:25:26 p.m. a Target Team Member "walks briskly over the area where plaintiff's foot slipped without incident." (Def. SMF ¶ 13). Seconds later, another Team Member walks over the exact area where plaintiff slipped, again without incident. Between 1:31:00 and 1:37:31, a number of guests, some with shopping carts and multiple Team Members, pass over the area of Plaintiff's fall without issue. (Id.).

Approximately five (5) minutes before Plaintiff's incident, Team Member Morgan Conway walked directly over spot of the fall with no issue. (Id.). Ms. Conway then assisted a customer in that same area. According to the surveillance footage, Ms. Conway was with a guest with three children, one in a car seat holding what the parties agree is likely some type of sippy cup. Around 1:38:33, "Ms. Conway walks past the area where the unknown guest and her three children stopped at 1:39:24 after assisting the guest." (Def. SMF ¶ 19). At 1:39:46, this customer and her family exit the store. Plaintiff's fall occurred shortly after, at 1:40:34. After Plaintiff's fall, Ms. Conway testified that Plaintiff pointed out the liquid on the floor, and she observed that there was a small puddle. (Conway Dep. 17: 10-14).

Plaintiff filed a Complaint against Target ("Defendant"), John Doe Company #1-5, and John Doe #1-5 alleging negligence (First Count); and her husband, John Schmicker ("Mr. Schmicker"), brings a claim for loss of consortium (Second Count). The action was removed to this Court on November 15, 2017. [Dkt. No. 1]. Defendant filed a Motion for Summary Judgment. [Dkt. No. 27]. That motion is fully briefed.

## II.   Summary Judgment Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once

the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256–57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   Analysis

In the First Count of the Complaint, Plaintiff alleges that Defendant was negligent in the operation and/or maintenance of its premises as to existing dangerous conditions. (Compl. ¶¶ 5-10). To establish a claim for negligence, plaintiff must prove "(1) duty of care, (2) breach of that duty, (3) proximate cause, and (4) actual damages." Weinberg v. Dinger, 524 A.2d 366, 373 (N.J. 1987). Accordingly, "in any case founded upon negligence, the proofs ultimately must establish that defendant breached a duty of reasonable care, which constituted a proximate cause of the plaintiff's injuries." Brown

4

v. Racquet Club of Bricktown, 471 A.2d 25, 29 (N.J. 1984) (citing Hansen v. Eagle-Picher Lead Co., 84 A.2d 281, 288 (N.J. 1951).

In premises liability cases, the duty of care owed will depend on both defendant's and plaintiff's status. The parties agree that, here, Defendant is the proprietor of commercial premises, a business owner; and plaintiff was its business invitee. Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110, 1114 (N.J. 1993) (an invitee is an individual "invited on the premises for purposes of the owner that often are commercial or business related"). "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 316 (N.J. 2003). Under New Jersey law, this due care "requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Id. (citing O'Shea v. K. Mart Corp., 701 A.2d 475 (N.J. App. Div. 1997)).

"Negligence is never presumed, and the mere occurrence of an accident causing injuries is not alone sufficient to justify an inference of negligence." Rivera v. Columbus Cadet Corps of Am., 59 N.J. Super. 445, 450, 158 A.2d 62, 65 (App. Div. 1960) (citations omitted). A business "proprietor generally is not liable for injuries caused by defects of which he had no actual or implied knowledge or notice, and no reasonable opportunity to discover." Brown, 471 A.2d at 30. Thus, premises liability is established when a plaintiff shows "a defendant knew or had the reasonable opportunity to discover and correct the defect." Prioleau v. Kentucky Fried Chicken, Inc., 85 A.3d 1015, 1022 (N.J. Super. App. Div. 2014), aff'd as modified and remanded, 122 A.3d 328 (N.J. 2015).

5

Here, Defendant argues that Plaintiff cannot establish Defendant is liable for negligence because the record lacks any evidence that Defendant had actual or constructive notice of any dangerous condition. The Court agrees.

First, Defendant submits that there is no actual notice. [Dkt. No. 27-4 at p. 14]. In response, Plaintiff concedes that there is "no evidence that any person actually communicated to any of Defendants' employees that there was a liquid spill on the floor." [Dkt. No. 29 at p. 2]. Instead, Plaintiff argues that a jury could find actual knowledge from "two segments" of the surveillance video: (1) at 1:35:27-1:35:29, when a "target employee quickly walks over the general area where Plaintiff eventually fell;" and (2) at 1:36:42 to 1:37:01, when a different "Target employee (pharmacist or pharmacy tech, perhaps) walks through the area of the fall." (Id. at 2-3). Neither of these occurrences demonstrate notice of a dangerous condition.

The first segment refers to a Target employee that is seen walking to the general area where Plaintiff ultimately fell, but turning around to walk back in the direction she came from. Plaintiff suggests that a reasonable jury could find that this employee looked to the floor and observed the liquid, and conclude she left to "take action." [Dkt. No. 29 at p. 2]. The video footage, however, "is difficult to visualize." (Id.). It is entirely unclear where the employee is looking. In addition, the record is devoid of any supporting evidence that this employee, or any employee, saw liquid on the floor. Moreover, nothing in the record suggests that this particular employee left to "take action." Indeed, the video does not show that this particular employee returned to the general area. In other words, there is no way to know why the employee turned around. Notably, another Target employee walks over that general area without issue less than one minute following this incident.

6

Next, Plaintiff submits that a jury, viewing the second video segment, could find a Target employee created the dangerous condition, therefore, establishing Target's liability. This segment depicts an individual in a white coat walking through the relevant area holding what could be a water or spray bottle. (Def. Ex. D at 1:36:42 to 1:37:01). The individual walks at one pace, does not stop, and does not appear to move the object in her hand. In addition, nothing in the record corroborates that a liquid from this container spilled onto the floor. Although the object the individual is holding appears to be slightly tilted, less than thirty (30) seconds later, another individual passes through the same area without incident. Thus, even assuming the "bottle" contained a liquid—which Plaintiff can only speculate absent additional evidence—the record fails to support that this employee created the spill on the floor.[1]

"An inference [of negligence] can be drawn only from proved facts, and cannot be based upon a foundation of pure conjecture, speculation, surmise or guess." Prioleau v. Kentucky Fried Chicken, Inc., 85 A.3d 1015, 1022 (N.J. App. Div. 2014), aff'd as modified and remanded, 122 A.3d 328 (N.J. 2015) (citing Long v. Landy, 171 A.2d 1, 7 (1961)). Here, without more, the mere possibility that, one employee saw liquid on the floor or caused the liquid to end up in the floor, is pure speculation. Such guessing is insufficient to establish a genuine dispute as to whether Defendant knew of the condition or whether a Target employee created the condition.

Similarly, the Court finds that there is insufficient evidence of constructive notice. To establish constructive notice, Plaintiff must show that the condition on the floor existed "'for such a length of time that [Target] should have known of its

---

[1] Notably, Defendant argues that Plaintiff also fails to demonstrate this person in the video is, in fact, a Target employee.

presence."' Layden v. Target Corp, 768 F. App'x 152, 156 (3d Cir. 2019) (alteration in original) (quoting Bozza v. Vornado, Inc., 200 A.2d 777, 779 (N.J. 1964)). "The characteristics of the [liquid] giving rise to the slip and fall, or eye witness testimony may [also] support an inference of constructive notice about the dangerous condition." Troupe v. Burlington Coat Factory Warehouse Corp., 129 A.3d 1111, 1114 (N.J. App. Div. 2016) (citations omitted).

Here, no eyewitness can indicate how long the clear liquid remained on the floor. Notably, Plaintiff herself did not see liquid on the floor prior to her fall, and has no knowledge of when or how the condition was created. (Pl. Dep. 37:21-38:1). There is also no dispute that leading up to Plaintiff's fall, no other guest or employee walking through the same area slipped or fell. Finally, Surveillance footage does not clearly capture any person spilling liquid onto the floor or any other means of how the condition was created. See Larkin v. Super Fresh Food Markets, Inc., 291 F. App'x 483, 485 (3d Cir. 2008) ("Without evidence about when [the condition was created], a fact-finder could only speculate about whether [defendant] should have discovered and corrected the problem.").

Just minutes prior to Plaintiff's incident, Ms. Conway walked over the area of the fall to assist another customer and recalled: "[t]here was nothing there, no baskets, I didn't see a liquid." (Conway Dep. at 25:17-21). While there is a water fountain at the Deptford Target, it was not near the area of Plaintiff's fall, "it sits all the way across the front." (Id. at 29:5-8). Ms. Conway stated that she did not see any water bottles, containers, or cups near the area (Id. at 29: 11-16), nor did she see water on the floor anywhere else in the general vicinity that morning. (Id. at 19:14-16). There is no evidence to the contrary.

8

Additionally, Plaintiff does not dispute that Target Team Members are trained in Target's Spill Clean-up Procedures. (Def. SMF ¶ 25; Pl. Resp. to ¶ 25). Ms. Conway testified that her training with respect to guest service areas included how to clean the front and to "make sure nothing is on the ground." (Conway Dep. 9:13-20). When asked if she received training "in making periodic inspections of the area" she worked, Ms. Conway testified that "[w]e always looked at the floor or the shelving to make sure everything is okay, so technically yes." (Id. at 12:22-13:4). She further testified that she "always look[s] at the floor and around the registers." (Id. at 25:14-20).

As to the characteristics of the particular condition, Ms. Conway observed a "smeared puddle" of clear liquid only after Plaintiff pointed out what caused her fall. "You could see where her shoeprint had been, and it looked like it was right in the middle." (Conway Dep. at 18:1-8). Plaintiff testified likewise, stating she could see the trail that she left. (Pl. Dep. 37:14-20). But there is no indication of other foot prints, tracks, or trails through the puddle, despite the heavy foot traffic through the area. Thus, absent pure speculation, the record is devoid of any evidence as to how long the dangerous condition—the liquid substance on the floor—existed. Therefore, no reasonable jury could conclude the liquid was on the floor "for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." Parmenter v. Jarvis Drug Stores, Inc., 138 A.2d 548 (N.J. App. Div. 1957); see also Troupe, 129 A.3d at 1114 (affirming summary judgment for defendant because there was no proof of notice where the record contained "no eyewitnesses and nothing about the characteristics of the [condition] that would indicate how long it had been there").

Accordingly, the lack of proof as to Defendant's knowledge of the dangerous condition in this matter warrants summary judgment in favor of Defendant. Furthermore, Mr. Schmicker's claim for loss of consortium (Second Count) is a derivative claim which depends for its sustenance upon a viable tort claim of the spouse. Reilly v. Prudential Property and Casualty Insurance Co., 653 F. Supp. 725 (D.N.J. 1987). Because Target will be awarded summary judgment on Plaintiff's only claim, her husband has no foundation from which to derive a loss of consortium claim.

### IV.   Conclusion

For the forgoing reasons, the Court will grant Defendant's Motion for Summary Judgment [Dkt. No. 27].

An appropriate Order shall issue.

Dated: May 13, 2020

                                            /s/ Joseph H. Rodriguez
                                           HON. JOSEPH H. RODRIGUEZ
                                           United States District Judge